FIRST NATIONAL BANK OF KEY WEST, a national bank organized and existing under the laws of the United States, *Plaintiff in Error*, vs. H. H. FILER, A. G. HOLMES and S. E. LIVINGSTON, *Defendants in Error*.

145 So. 204.

Division B.

Opinion filed January 2, 1933.

Petition for rehearing denied January 11, 1933.

528

*Loftin, Stokes & Calkins,* for Plaintiff in Error;.

*Philip Clarkson,* for Defendants in Error.

PER CURIAM.—This was a suit at law brought by the holder of certain promissory notes issued by the Board of Public Instruction of Dade County, Florida, to charge the members of the Board issuing them with personal or individual liability thereon. Demurrer was sustained to both counts of the declaration setting up the alleged liability. This writ of error was taken by the plaintiff below to the final judgment consequent entered on the demurrer that had been sustained to the declaration.

One of the notes in controversy is in words and figures as follows:

. "No. 2 $2,000.00 Miami, Florida, September 26, 1926.

On or before One (1) Year after date, for value received, We promise to pay to the order of WHITPHEL PROPERTIES, INC., TWO THOUSAND AND NO/100 DOLLARS Payable at City National Bank & Trust Company of Miami, Florida, with interest thereon at the rate of eight per cent. per annum from date until paid. Interest payble semi-annually. The maker and endorser of this note further agree to waive demand, notice of non-payment and protest, and in case suit shall be brought for the collection hereof, or the same has to be collected upon demand of an attorney, to pay reasonable attorney's fees for making such collection. Deferred interest payments to bear interest from maturity at eight per cent. per annum, payable semi-annually.

This note is secured by mortgage on Block 3 of Kenington Park Seventh Street Addition

(Sgd)
                THE BOARD OF PUBLIC INSTRUCTION
                FOR THE COUNTY OF DADE, STATE OF
                FLORIDA
                By Chas. M. Fisher (Seal)
                    Secretary

(Official seal of the Board of Public Instruction for Dade County, Florida, affixed.)''

The other notes sued on were substantially the same in tenor and effect.

The two counts of the declaration were to the following effect in substance:

### "First Count.

That defendants during the year of 1926 constituted the School Board of Dade County; that in September, 1926, the defendants, acting as members of said Board purchased and acquired a school site without first having made request of the county commissioners of Dade County to contract a debt for the purchase of a school site and without an affirmative vote of the qualified voters being first had and obtained, and without the county commissioners having authorized or made any provision for the contracting of a debt to purchase said school site, as required by Section 509 of C. G. L., 1927; that, in part payment for said school site the defendants directed, without first having complied with said Section 509, the execution and delivery, at one and the same time, in the name of the School Board, by the Clerk of the Board, of three notes, for $2,000 each; that at the time of the purchase of said site and at the time defendants directed the notes to be delivered and at the time said notes were delivered the defendants knew that said Section 509 had not been complied with; that the party to whom said notes were delivered assigned same to J. W. Leon and J. W. Leon in turn assigned the same to the Bank before maturity for $5,400; that the bank is the holder and owner of said notes; that at the time the bank acquired said notes it did not know that said Section 509 had not been complied with; that said notes were presented to the School Board for payment and refused, and then presented to the defendants for payment and refused; that said notes have never been paid, and the bank claims $6,000 damages.

### Second Count.

That defendants during 1926 constituted the Board

of Public Instruction for Dade County and received compensation as such; that during 1926 the defendants, as constituting said Board undertook to acquire for the Board a certain tract of land in Dade County as a site for a school building without first having complied with Section 509 of the Compiled General Laws of Florida, 1927; that in part payment thereof the defendants, during September, 1926, without having first complied with said Section 509, and knowing same had not been done, wilfully directed the delivery by the clerk, in the name of the board, of three negotiable promissory notes for $2,000 each; that on September 26, 1926, said notes were so executed and delivered; that at the time of the attempted purchase of said school site and at the time said notes were directed to be executed and delivered by defendants, the defendants knew that said board had not complied with said Section 509; that said notes purported to have been made by said board and purported to be regular and genuine obligations of the board, with the seal of the board affixed, and that the Bank believed when it acquired them that said notes were regularly made and executed by said board and that they were good and valid obligations of said board, and relied thereon; that before maturity of said notes the Bank purchased said notes and paid the sum of $5,400 therefor; that the bank did not discover until after the maturity of said obligations that the defendants attempting to act as said board had not complied with said Section 509; that said notes were presented to said board for payment and refused, and then presented to defendants and payment refused; and the Bank claims damages for the amount it paid for said notes and interest on such sum.''

It thus appears that the declaration showed, generally, that the Board of Public Instruction of Dade County bought a school site without first complying with Section 509 C. G. L., 436 R. G. S.; that in part payment therefor, the Board gave the vendor its promissory notes executed under its corporate name and seal, by its Sec-

retary; and that such notes came into the hands of the plaintiff, bank, for value, before maturity, as endorsee thereof.

Therefore, the two propositions of law arising on this appeal are: (1) Are the individuals who composed the Board of Public Instruction that undertook to issue the unauthorized notes, *personally* liable in assumpsit thereon to a bank that subsequently became an endorsee of such notes; and if not, (2) are the individual members of the Board of Public Instruction so issuing the promissory notes without authority to contractually bind the school board thereby, *personally liable in tort* to the endorsee bank, because of their unauthorized, if not unlawful act in undertaking to have issued and put into circulation, negotiable notes that the Board of Public Instruction itself, had no lawful authority to execute?

That all of the notes here sued on were invalid and unenforceable at law, against the Board of Public Instruction, has been decided by this Court. See First National Bank of Key West vs. The Board of Public Instruction of Dade County, (decided at this term) 145 So. 203. See also Babcock vs. Board of Public Instruction of Dade County, 104 Fla. 693, 140 Sou. Rep. 644.

Disposing of the asserted liability in assumpsit first, we find that the names of none of the individual defendants appear on the notes sued on. The general rule is, that the names of the defendants not appearing on promissory notes sued on, the defendants cannot be held liable on the notes, as if makers thereof, in the absence of some special showing that the signature that does appear on the notes, was the result of some *personal* act of signing done by the defendants toward their execution and issuance in the form in which they appeared signed in the Board's name. Sec. 6778 C. G. L., 4692 R. G. S.; Daniel on Negotiable Instruments, 5th Ed. Sec. 303; Henry Pil-

cher's Sons Inc. vs. Martin, 102 Fla. 672, 136 Sou. Rep. 386. So the demurrer to the first count of the declaration was properly sustained.

But as to the second count, the demurrer should have been overruled.

Whenever there is a wrong there is a remedy. And the general test to determine whether there is a liability in an action of tort, is the question whether the defendant has by act or omission disregarded his duty. This applies to public officers who may become liable on common law principles to individuals who sustain special damages from the negligent or wrongful failure to perform imperative or ministerial duties. Dillon on Municipal Corporations (5th Ed.), Vol. 1, page 762; 22 R. G. S. par. 160-162, pages 483-484).

This Court has recently stated in no uncertain terms that public officers must use due diligence in discharging their duties, particularly where rights of individuals may be jeopardized by their neglect. And in the case referred to, this Court held that a tax collector had to bear the loss resulting from failure to present, in due time before a bank failed, a check voluntarily received by her for taxes, although there was no duty under the law to receive a check for taxes. See Palm Court Corporation vs. Smith (Tax Collector), 103 Fla. 233, 137 Sou. Rep. 234.

The principal consideration here, however, is the liability of a public officer for the wrongful act of a corporate body of which he is a member, but in which he participated as to the wrongful act complained of. While this question has not often been presented to the courts for adjudication, and the general rule has been understood to be, that a public officer, who is a member of a board or body corporate upon which a duty rests, cannot be held liable for the neglect of duty by the body

or board of which he is a member, it by no means follows that a public officer may not, upon the principles of the adjudicated cases decided in this State, and in States whose decisions we regard as highly persuasive, be held personally and individually responsible for the acts of public boards or official bodies, so far as he personally joins in and lends his efforts toward the accomplishment of the wrongful acts of the body or board itself as an entity.

Thus, in Tritchelor vs. Bergeson (Minn.), 241 N. W. 578, it was held that an individual member of a school board who participated in an unauthorized purchase of real estate, became liable to the school district for money expended pursuant to the unlawful venture by the school board, which was undertaken by the Board as an entity, in violation of the positive statutes which regulated the manner in which the board should function with regard to the subject matter.

While it is true, as suggested by defendant in error, that in that case the action was allowed to be prosecuted by a taxpayer, for the benefit of the school district, and not to satisfy any individual claim on his part for damage alleged to have been sustained by him personally, the legal principle underlying the recognition of the officer's liability and the right to enforce it, remains the same, whether the suit be brought by a taxpayer on behalf of the injured public board, or by plaintiff as an individual, to redress his private wrong. This court has held that where the failure to discharge a specific public obligation results in special damage to a private individual, an action of tort for the special damage sustained by the injured party, may be maintained. Mugge vs. Tampa Waterworks Co., 52 Fla. 371, 42 Sou. Rep. 81, 120 Am. St. Rep. 207, 6 L. R. A. (N. S.) 1171.

In this case, the gist of the complaint set up in the

second count of the declaration is, that the defendants as members of the Board of Public Instruction of Dade County, for compensation, entered into the public calling of undertaking to act as members of a school board in the administration of the business and affairs of the county schools, and that they committed a tort against the plaintiff by negligently, and in violation of their duty in the premises, causing to be issued and put into circulation certain promissory notes that purported to be regular and genuine obligations of the Board of Public Instruction of Dade County, having the seal of said Board affixed thereto, whereas, in truth and in law, the said notes, while purporting on their face to be genuine and regular, were invalid because of the defendants' neglect, as board members, to see that the law was so complied with as to make them valid.

Official action, the result of performing a certain specific duty arising from designated facts is a ministerial act. Grider vs. Tally, 77 Ala. 422, 54 Am. Rep. 65. Another way of expressing the same thought is that a duty is to be regarded as ministerial, when it is a duty that has been positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated the duty to perform under the conditions specified, not being dependent upon the officer's judgment or discretion. Mechen, Public Offices and Officers (1890), par. 658, page 442. And that a necessity may exist for the ascertainment, from personal knowledge, or from information derived from other sources, of those facts or conditions, upon the existence or fulfillment of which, the performance of the act becomes a clear and specific duty, does not operate to convert the act into one judicial in its nature. Grider vs. Tally, supra.

Public officers cannot rightfully dispense with any of

the essential forms of proceedings which the Legislature
has prescribed for the purpose of investing them with
power to act in the matter of contracting debts and is-
suing evidences thereof. McClure vs. Oxford, 94 U. S.
429, 24 L. Ed. 129. And since the issuance of evidences of
indebtedness that might have been valid under a state of
facts that might have existed gives rise to a presumption
of the existence of the facts essential to validity (Inde-
pendent School District vs. Rew, 111 Fed. 1, 49 C. C. A.
198), the authority of public officers to proceed in a par-
ticular way and only upon specific conditions as to such
matters, implies a duty *not to proceed* in any other
manner than that which is authorized by the law.

That public officers should be held to a faithful per-
formance of their official duties, and made to answer in
damages to all persons who may have been injured
through their malfeasance, omission or neglect, to which
the persons injured have in no respect contributed, can-
not be denied. Lick vs. Madden, 36 Cal. 208, 95 Am. Dec.
175 (180). And it is well settled that where the law im-
poses upon a public officer the performance of ministe-
rial duties in which a private individual has a special
and direct interest, the officer will become liable to such
individual for any injury which he may proximately
sustain in consequence of the failure or neglect of the
officer either to perform the duty at all, or to perform it
properly. In such a case the officer is liable as well for
nonfeasance as for misfeasance or malfeasance. Mechem,
supra, par. 664, page 445.

Thus it was said by the Supreme Court of the United
States in upholding the liability of a municipal officer
for failure to levy a specific tax required to be levied to
pay a judgment recovered against the municipality:
"The rule is well settled that where the law requires
absolutely a ministerial act to be done by a public officer,

and he neglects or refuses to do such act, he may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authorities to this effect. A mistake as to his duty and honest intentions will not excuse the offender.'' Amy vs. Supervisors, 11 Wall. (U. S.) 136, 20 L. Ed. 101.

In the case at bar, there was a clear legal duty on the defendants, as members of the Board of Public Instruction of Dade County, to proceed in a particular way with respect to the issuance of evidences of indebtedness for the purchase of school sites. This clear legal duty to proceed in a particular way to comply with the statutes, implied an equally clear legal duty not to proceed in any other way, and not to issue evidences of indebtedness, apparently valid on their face and having the seal of the Board of Public Instruction attached thereto, unless the conditions warranting such issuance had been ascertained by them beforehand, to exist.

The duty to comply with the indispensable legal formalities required to be observed in the issuance of public securities and evidences of indebtedness, in order to make them valid and bind the corporate body or board so issuing them, is ministerial and non-discretionary in character. A neglect of that duty by proceeding in a manner in disregard of the law and to the special damage of another not a contributor to the default, therefore renders the participants in such illegal conduct liable in damages to the person specially injured by such omission or neglect. Lick vs. Madden, supra.

While in appropriate cases where the circumstances may justify it, a delinquent officer may plead and prove an honest mistake of law in mitigation of damages (Long vs. Long, 57 Iowa 497, 10 N. W. 875) he cannot entirely escape the consequences of his plain failure to comply with the law imposing upon him, or the public corpora-

tion or board of which he is a member, a positive non-discretionary legal duty, merely because the ensuing damage was caused by an act done or omitted under color of office, and not personally. The illegal act or omission of a public corporation or board of which the officer sued was a member, becomes the act of those members who actually participate in its consummation, and such officer members so participating in the illegal act or neglect may be sued and held liable personally for the resulting damage that may have been sustained by a person specially injured by the default in duty. Tritchelor vs. Bergeson, supra.

The judgment should be affirmed as to the first count and reversed as to the second count of the declaration, with directions to overrule defendants' demurrer to the second count and have such further proceedings as may be according to law.

Affirmed as to judgment on first count. Reversed as to judgment on second count. Remanded with directions for further proceedings.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.
BUFORD, C.J., concurs in the opinion and judgment.
Filed under Rule 21 A.